THE STATE OF OHIO (CITY OF CINCINNATI), APPELLANT, *v.* DORSO, APPELLEE.

[Cite as State *v.* Dorso (1983), 4 Ohio St. 3d 60.]

(No. 82-425—Decided March 23, 1983.)

*Mr. Richard A. Castellini,* city solicitor, *Mr. Paul J. Gorman,* city prosecutor, and *Mr. John L. Hanselman, Jr.,* for appellant.

*Mr. Wm. Luke Leonard,* for appellee.

LOCHER, J. In the case at bar, this court is asked to determine whether the city of Cincinnati's "Loud Musical Noises" ordinance, Section 910-9, meets constitutional prescriptions for definiteness. To accomplish this task we must examine specifically the language in the ordinance that establishes the threshold for the attachment of criminal liability for, *inter alia,* playing music or amplifying sound, *i.e.,* such activities may not be conducted "in such

manner as to disturb the peace and quiet of the neighborhood, having due regard for the proximity of places of residence, hospitals or other residential institutions and to any other conditions affected by such noises."

Appellant resolutely asserts that the ordinance provides the public with the requisite "fair notice" of what behavior shall be deemed criminal. Appellee and a majority of the court of appeals, however, disagree. Indeed, appellee finds impermissibly vague not only the ordinance's use of the term "neighborhood" but also that of the phrase "as to disturb the peace and quiet." Additionally, appellee argues that the ordinance's imposition upon a party playing music or amplifying sound of the obligation to consider the proximity of residential properties and other sound sensitive activities contravenes constitutional principles of due process. A review of relevant common-law precedent and the applicable rules of construction, however, clearly shows that appellant states the far better case.

It is axiomatic that all legislative enactments enjoy a presumption of constitutionality.[2] *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, 377 [15 O.O.3d 450]; *State, ex rel. Taft,* v. *Campanella* (1977), 50 Ohio St. 2d 242, 246 [4 O.O.3d 423]; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142 [57 O.O. 134], paragraph one of the syllabus. Similarly uncontroverted is the legal principle that the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional. *State* v. *Sinito* (1975), 43 Ohio St. 2d 98, 101 [72 O.O.2d 54]; *Wilson* v. *Kennedy* (1949), 151 Ohio St. 485, 492 [39 O.O. 301]; *Eastman* v. *State* (1936), 131 Ohio St. 1 [5 O.O. 248], paragraph four of the syllabus. Specifically, as to challenges to a statute based upon its alleged vagueness, the United States Supreme Court has stated, "* * * [I]f this general class of offenses [to which the statute applies] can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction." *United States* v. *Harriss* (1954), 347 U.S. 612, 618. Thus, we are obligated to indulge every reasonable interpretation favoring the ordinance in order to sustain it.

The court, in *Harriss,* also articulated the standard to be followed in determining whether a statute is impermissibly vague or indefinite. The court wrote: "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States* v. *Harriss, supra,* at page 617. See, also, *Marks* v. *United States* (1977), 430 U.S. 188, 191; *Parker* v. *Levy* (1974), 417 U.S. 733.

A statute or ordinance is not necessarily void for vagueness, however, merely because it could have been more precisely worded. *Roth* v. *United States* (1957), 354 U.S. 476, 491; *United States* v. *Petrillo* (1947), 332 U.S. 1,

---

[2] Similarly, R.C. 1.47 provides, in relevant part:
"In enacting a statute it is presumed that:
"(A) Compliance with the Constitutions of the state and the United States is intended."

7-8. The Constitution does not mandate a burdensome specificity. As the United States Supreme Court observed in *Rose* v. *Locke* (1975), 423 U.S. 48, at pages 49-50, the "* * * prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' *Robinson* v. *United States,* 324 U.S. 282, 286 (1945)." In the case at bar, the challenged ordinance cannot reasonably be described as so indefinite as to be constitutionally repugnant.

Appellee's primary assault on Cincinnati's "Loud Musical Noises" ordinance is mounted against the ordinance's adoption of the term "neighborhood." He asserts that the term is ambiguous and that the municipal council erred in failing to define it. In support of his contentions, appellee cites *Connally* v. *General Constr. Co.* (1926), 269 U.S. 385.

A legislative body need not define every word it uses in an enactment. See *Kiefer* v. *State* (1922), 106 Ohio St. 285. Moreover, any term left undefined by statute is to be accorded its common, everyday meaning. As this court previously stated in paragraph five of the syllabus in *Eastman* v. *State, supra* (131 Ohio St. 1): "Words in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them."

Given the context in which it appears, the meaning of "neighborhood," as used in the herein controverted ordinance, is hardly likely to confound the person of ordinary intelligence seeking "fair warning" of what conduct the ordinance proscribes. Webster's Third New International Dictionary defines "neighborhood" to mean "the quality or state of being immediately adjacent or relatively near to something." According to Webster's New Collegiate Dictionary, "neighborhood" denotes "a place or region near" and "the people living near one another."

Clearly, the concept of neighborhood and the closeness it implies are well within the ken of the ordinary person. Indeed, that the definition of "neighborhood" was well within appellee's own comprehension is evident as at trial he specifically referred to those who initiated the criminal complaint against him as his "neighbors" and people who lived "very close" to his business. "Neighborhood," as employed in the statute, meets constitutional standards. We cannot reasonably have expected the municipal council to have quantified, by assigning metes and bounds, or otherwise further defined the term. The Constitution simply does not demand such specificity.

Notwithstanding appellee's protestations, we find *Connally* v. *General Constr. Co., supra,* inapposite to our present deliberations. In *Connally,* an Oklahoma statute, which sought to match certain workers' pay rates with those prevailing in the locality where the work was performed, was invalidated. The court ruled that the term "locality," as used in the statute, was impermissibly vague given the mobility of the construction trade.

The instant action does not, however, involve a mobile business. Neither

appellee's roller rink nor the surrounding neighborhood is a transient entity. Furthermore, the *Connally* court explicitly limited its ruling to the facts of the case. The court stated: "In other connections or under other conditions the term 'locality' [which the court found synonymous with "neighborhood"] might be definite enough * * *." *Connally* v. *General Constr. Co., supra,* at page 395. The case at bar presents a compelling example of the "other connection or condition" referred to in *Connally.* As used in the subject ordinance, "neighborhood" possesses the clarity and certainty which the Constitution demands.

Citing *Coates* v. *Cincinnati* (1971), 402 U.S 611, appellee additionally contends that the phrase "to disturb the peace and quiet" is impermissibly vague as it establishes no objective measure for gauging what "disturbs." In *Coates,* the United States Supreme Court invalidated an ordinance which prohibited citizens from, under certain conditions, assembling and acting in a manner "annoying" to others. Again, appellee's reliance is misplaced.

The court, in *Coates,* did not abrogate the ordinance for the failure of its drafters to employ a term more precise than "annoying." Rather, the court's action was premised upon the state court's failure to interpret the word "annoying" in a fashion that endowed it with the requisite specificity.[3] The United States Supreme Court in its critique of the state court's treatment of the case stated, at page 613:

"* * * the only construction put upon the ordinance by the state court was its unexplained conclusion that '* * * the standard of conduct which it specifies is not dependent upon each complainant's sensitivity.' * * * But the court did not indicate upon whose sensitivity a violation does depend—the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man."

However, here we adopt the approach taken by our counterpart in *State* v. *Chaplinsky* (1941), 91 N.H. 310, 18 A. 2d 754, and subsequently endorsed by the United States Supreme Court in *Chaplinsky* v. *New Hampshire* (1942), 315 U.S. 568. In appraising the constitutionality of a statute which criminalized directing "offensive, derisive or annoying" words to another, the New Hampshire court interpreted the statute so as to obviate any potential ambiguities. The New Hampshire court, at page 320, stated: "The word 'offensive' is not to be defined in terms of what a particular addressee thinks. * * * The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight." The United States Supreme Court cited the identical passage in affirming the state court's decision and rejecting claims of the *Chaplinsky* statute's unconstitutionality. *Chaplinsky* v. *New Hampshire* (315 U.S.), at page 573.

Following the persuasive lead of the *Chaplinsky* tribunals, we construe the Cincinnati ordinance at issue to prohibit the playing of music, amplifica-

---

[3] The statute in *Coates* was also found to abridge the constitutional rights of free assembly and association.

tion of sound, etc., in a manner which could be anticipated to offend the reasonable person, *i.e.*, the individual of common sensibilities. Specifically, we find the ordinance to proscribe the transmission of sounds which disrupt the reasonable conduct of basic human activities, *e.g.*, conversation or sleep. Our construction of the ordinance does not permit the imposition of criminal liability upon a party whose conduct disturbs only the hypersensitive. Thus, the standard hereby adopted vitiates the claimed vagueness of the ordinance.

Finally, appellee avers that the language in the ordinance requiring a party to have "due regard for the proximity of places of residence * * * and to any other conditions affected by such noises" places a constitutionally proscribed burden upon the party. Appellee asserts that the provision punishes an individual for failing to control conditions, *e.g.*, the wind direction or the behavior of others, outside his dominion and which may affect the neighborhood's sensitivity to the propagated sound. Appellee's contentions evidence not only a gross misapprehension of the provision's meaning but also a profound misunderstanding of the very legitimacy of the ordinance's purpose.

The cited language in the ordinance does not, as appellee argues, mandate that a party take into consideration conditions that may affect the sounds he generates; it simply dictates that, in playing music or amplifying sound, a party consider how particular features in his surroundings would be affected *by* the sounds. More importantly, however, even to the extent that it does implicitly demand that a party take into account such factors as the operative atmospheric conditions before acting, the ordinance still remains constitutionally inoffensive.

Neither party to the instant action disputes the municipality's right to regulate, through the lawful exercise of its police power, "loud musical noises." Such regulation by necessity involves the reasonable circumscription of the rights of individuals for the greater benefit of the commonweal. Thus, it is proper for a municipality to demand that a party adapt his behavior to even such facts as wind direction and velocity so as not to interfere with the public's assertion of a superior prerogative. The provision of the ordinance herein at issue does no more than that.

Further, appellee's fear that one may unfairly be held criminally accountable for the actions of others is also unjustified. As set forth previously, a party need only avoid disturbing the peace and quiet of his reasonably behaved neighbor. Any neighbor whose conduct is so extraordinary that it, in effect, renders the sounds generated by a party to be disturbing does not fall within the scope of the ordinance's protection.

Ordinances aimed at regulating noise are inherently imperfect. The city of Cincinnati's "Loud Musical Noises" ordinance, however, as construed, provides parties with constitutionally sufficient "fair warning" of what conduct is criminally punishable.

Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

CELEBREZZE, C.J., HOLMES, C. BROWN and COOK, JJ., concur.

W. BROWN and SWEENEY, JJ., dissent.

COOK, J., of the Eleventh Appellate District, sitting by assignment.

SWEENEY, J., dissenting. I disagree with the majority opinion that the word "neighborhood" possesses the requisite certainty which the Constitution demands, and therefore, I respectfully dissent. The term "neighborhood" is not defined anywhere in the Cincinnati ordinances, nor does it possess a technical or special meaning.

Here, the test to be applied is whether the ordinance gives a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. *Columbus* v. *New* (1982), 1 Ohio St. 3d 221, 223; *State* v.*Young* (1980), 62 Ohio St. 2d 370, 372 [16 O.O.3d 416]. Unlike the majority, I find that the ordinance in question contains sufficient ambiguity and thus, prevents a person of ordinary intelligence from fully ascertaining whether his proposed conduct is proscribed by the "Loud Musical Noises" ordinance.

The majority indulges us with several unprecedential dictionary definitions which supposedly lend a concise meaning to the word "neighborhood." However, instead of clearing up the issue, I feel that the majority has underscored the ambiguity inherent in the term. This being the case, it became the duty of the promulgators of the Cincinnati ordinance to define "neighborhood" as it relates to the forbidden conduct.

Based on *Connally* v. *General Constr. Co.* (1926), 269 U.S. 385; *Coates* v. *Cincinnati* (1971), 402 U.S. 611 [58 O.O.2d 481]; and *Columbus* v. *Thompson* (1971), 25 Ohio St. 2d 26 [54 O.O.2d 162], I would hold that the subject ordinance is facially void for vagueness and therefore, constitutionally impermissible under Section 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

As noted by the court of appeals below: "* * * where ambiguity exists in a criminal statute, doubts must be resolved in favor of the accused. *E.g., United States* v. *Bass* (1971), 404 U.S. 336, 92 S. Ct. 515."

Accordingly, I would hold that the reversal of appellee's conviction by the court of appeals should be affirmed.

W. BROWN, J., concurs in the foregoing dissenting opinion.