OPINION
This appeal involves three separate defendants, all of whom were charged with violating section 910-10 of the Cincinnati Municipal Code (CMC) due to the emission of loud noises from their automobiles. The ordinance provides, in pertinent part, that:
 (A) No person, firm or corporation being the owner or person in possession of a motor vehicle with any radio, phonograph, television, tape player, loud speaker or any other instrument, machine or device shall cause or permit any noise to emanate from the motor vehicle in such a manner and to be of such intensity and duration to create unreasonable noise or loud sound which causes inconvenience and annoyance to persons of ordinary sensibilities.
 (B) It shall be prima facie unlawful for a person, firm or corporation being the owner or person in possession of a motor vehicle with a device described above to cause or permit any noise emanating from a motor vehicle which is plainly audible at a distance of 50 feet from the motor vehicle. The lawful use of a motor vehicle horn shall not be a violation of this section.
Subsection (C) lists noises that are not violations of the ordinance. These include noises made by public-safety vehicles while on emergency run[1] and noises made during a parade or other activity "for which the sponsors have obtained the necessary permit."[2] Subsection (D) makes a violation of the ordinance a minor misdemeanor.
Defendants-appellants Bryan Boggs and Virgie Wilkes were in Eden Park at approximately 8 p.m. on July 20, 1997. Boggs received a citation for violating CMC 910-10 after a police officer heard music coming from his vehicle from over one hundred feet away. The officer also observed that a window of his vehicle was vibrating from the noise. Wilkes received a citation after the officer heard her vehicle's stereo from about seventy-five feet away.
On August 17, 1997, at about 5:20 a.m., a police officer issued a citation to defendant-appellant Bernard King after the officer observed King driving through a residential area of town and playing his car stereo very loudly, with the "bass pounding." The officer was over three hundred feet away when he heard it. After being stopped initially, King turned the music down. But, as he departed, he returned the volume to a loud level that was audible from over one hundred feet away. The officer then issued him another citation.
The cases were consolidated, and a bench trial was held. Boggs, Wilkes, and King each were found guilty of violating the ordinance. The court imposed a fine and court costs on King, but remitted costs for Boggs and Wilkes. The three now appeal, asserting three assignments of error. (The trial also involved another defendant, Debron Betts, who allegedly violated the ordinance. She was found not guilty, and her appeal hasalreadypreviously been dismissed as moot.)
moot. As forConcerning Boggs and Wilkes, we note that, in the past, this court has held that criminal appeals are moot if the trial court has remitted costs.[3] But those cases were decided before this court's opinion in State v. Harris, where we stressed that, for a criminal appeal to be moot, a defendant mustvoluntarily satisfy the judgment imposed upon him or her.[4]
Based on Harris, we now concludehold that Boggs's and Wilkes's appeals are not moot: becausemoot. Because the court remitted their fines and costs, they did not—alas they could not—"voluntarily" satisfy their judgments.
judgments. To hold otherwise would allow defendants to be convicted, but have no right to appeal.
 I. Vagueness and Overbreadth
In their first assignment, the appellants assert that CMC 910-10 is unconstitutionally vague and overbroad. In determining whether a criminal statute is void for vagueness, an appellate court must decide if the legislation "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute."[5] If so, it violates the constitutional requirement of definiteness.[6] On the other hand, a statute may be overbroad "if in its reach it prohibits constitutionally protected conduct."[7] When considering an overbreadth objection, a court must determine "whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments."[8]
To challenge the ordinance, the appellants make three general arguments based on the above standards. We reject all three. We apply the principle that "courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional."[9] Applying that principle, we conclude that the appellants have not overcome the presumption of constitutionality to which the ordinance is entitled.[10]
The appellants' first argument is that CMC 910-10, in general, does not express a clear and concise meaning that would allow a person of ordinary sensibilities to determine whether the nature of his or her acts is subject to punishment. But we conclude that the statute is specific enough to withstand both vagueness and overbreadth challenges. Subsection (B) explicitly states that it is prima facie unlawful for a person to cause from a motor vehicle a noise that is plainly audible from a distance of fifty feet or more. By placing a concrete and quantifiable measurement into the language of the ordinance, subsection (B) serves to objectively narrow its breadth.[11] It is reasonable to conclude that if the sound can be heard at such a distance, then the sound is excessively loud.
Second, the appellants specifically object to the clause in subsection (A) that limits a noise violation to one of unreasonable "intensity and duration." They argue that such a provision permits a number of subjective interpretations. But "intensity" and "duration" are words of common usage. We conclude that they convey "to any interested person a sufficiently accurate concept of what is forbidden."[12] Also, we hold that subsection (B)'s fifty-foot language further serves as a requisite objective guideline to clarify the nature of the violation. We do not believe that an exact length of time or measurement of magnitude, such as decibels (a measurement that is not necessarily one of common understanding), need be specified in the ordinance for it to withstand a constitutional challenge.
Third, appellants assert that subsection (A)'s language regarding "inconvenience and annoyance to persons of ordinary sensibilities" is too indefinite and results in arbitrary actions by police officers. Again, we disagree. We hold that the terms "inconvenience" and "annoyance" are not too indefinite, as we agree with courts that have held that such terms are "not beyond the grasp of the average person."[13] Further, we conclude that the words "persons of ordinary sensibilities" define a reasonableness standard.[14] In other words, the ordinance prohibits noise that would cause inconvenience and annoyance to reasonable persons. We hold that this standard is sufficiently definite so as to prohibit arbitrary enforcement by the police only unreasonable noises can bepunished.
punished. We also note that the formulation "inconvenience, annoyance, or alarm to persons of ordinary sensibilities" is the exact language used in Ohio's disorderly-conduct statute,[15]
which has survived vagueness challenges.[16]
Therefore, the trial court properly held that CMC 910-10 was neither impermissibly vague nor overbroad. Appellants' first assignment is without merit. The ordinance, on its face, is a constitutional exercise of the city's police power.
 II. Constitutionality as Applied
In their second assignment, the appellants assert that CMC 910-10 is unconstitutional in its application. Where an act is challenged on the ground that it is unconstitutional as applied, the burden rests upon the party making the attack to present clear and convincing evidence of actions that make the ordinance void as applied.[17] The appellants make two challenges to the application of the ordinance. We reject both.
First, the appellants argue that the ordinance is unconstitutional as applied because a disproportionate number of African Americans are cited for violating it. But, at trial, the only evidence offered by the appellants was a description of a report that showed that seventy-nine percent of the persons who were issued CMC 910-10 citations were African-American males. Although the statistics in the report were relevant, they alone were not sufficient to prove a constitutional violation, which would involve the Equal Protection Clause.[18] Because the appellants offered no other evidence to show an intent to discriminate on the part of the government, we hold that the trial court did not err in rejecting the appellants' initial argument.
The appellants' second argument is that their due-process rights were violated because, according to them, a permit had been issued for a protest of the loud-noise ordinance at Eden Park on the evening that Boggs and Wilkes were cited, and a law-enforcement official had stated that no loud-noise citations would be issued. (We assume that King, who was arrested on a different night, not in Eden Park, is not included in this argument.) The appellants point to the testimony of Nathaniel Livingston, an organizer of protests of the ordinance, who claimed that there was a permit and that Kent Ryan, Cincinnati's safety director, had informed him that loud-noise citations would not be issued. But Livingston could not recall if the permit had been issued for July 20, 1997, the date of Boggs's and Wilkes's arrests, or for another protest on another evening. And Livingston could not produce the permit that was allegedly granted for July 20. Also, Ryan denied stating that the loud-noise ordinance would not be enforced. The trial court was free to believe that there was no permit, as the defendants failed to produce one.
Considering these facts, weWe conclude that the appellants did not produce adequate evidence to show that their constitutional rights were violated. We, therefore, find no error by the trial court. CMC 910-10 was constitutional as applied.
 III. Sufficiency and Manifest Weight
In their third assignment, the appellants argue that their convictions were based upon insufficient evidence and were against the manifest weight of the evidence. To reverse a conviction for insufficient evidence, an appellate court, reviewing the evidence in the light most favorable to the prosecution, must conclude that no reasonable trier of fact could have found the defendant guilty.[19] In reviewing a manifest-weight issue, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[20]
Here, the state's evidence clearly demonstrated that appellants permitted noise that was plainly audible at a distance of fifty feet away to emanate from their cars. The police heard Boggs's stereo from over one hundred feet away, Wilkes's stereo from around seventy-five feet, and King's stereo from over three hundred feet the first time and around one hundred feet the second time. Hence, the prosecution set forth a prima facie case against appellants under CMC 910-10(B).
Furthermore, the police were reasonable in concluding that the noise emanating from appellants' cars was inconvenient and annoying. For Boggs and Wilkes, the police presence in Eden Park was due in part to complaints about the noise from residents around the area. There also were numerous others in the park that evening. For King, who was traveling through a residential area at 5:20 in theearly morning, it was reasonable to infer that many people were still asleep and that, if the police heard his music from over three hundred feet away, so did the peoplesleeping.people attempting to sleep.
In short, we concludeWe hold that there was sufficient evidence for a reasonable trier of fact to find appellants guilty beyond a reasonable doubt and that the convictions were not a manifest miscarriage of justice. Appellants' third assignment is overruled.
Therefore, we affirm the judgments of the trial court isaffirmed.
Judgments affirmed.
 Gorman, P.J., and Shannon, J., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court recorded its own entry on the date of the release of this Opinion.
[1] CMC 910-10(C)(2).
[2] CMC 910-10(C)(4).
[3] See, e.g., State v. Sunday (May 10, 1989), Hamilton App. Nos. C-880221 through C-880223, unreported.
[4] (1996), 109 Ohio App.3d 873, 875, 673 N.E.2d 237, 238.
[5] State v. Dorso (1983), 4 Ohio St.3d 60, 61, 446 N.E.2d 449,450 (quoting United States v. Harriss [1954], 347 U.S. 612, 617,74 S.Ct. 808, 811).
[6] Id.
[7] Akron v. Rowland (1993), 67 Ohio St.3d 374, 387,618 N.E.2d 138, 148 (quoting Grayned v. Rockford [1972], 408 U.S. 104,114-115, 92 S.Ct. 2294, 2302).
[8] Id.
[9] Dorso, 4 Ohio St.3d at 61, 446 N.E.2d at 450.
[10] See id.
[11] See Kent v. Boyer (Oct. 9, 1998), Portage App. Nos. 97-P-0107 and 97-P-0108, unreported.
[12] Kovacs v. Cooper (1949), 336 U.S. 77, 79, 69 S.Ct. 448,449-450.
[13] See State v. Livingston (Oct. 2, 1986), Montgomery App. No. CA9641, unreported.
[14] See Dorso, supra, at 64, 446 N.E.2d at 452.
[15] R.C. 2917.11(B)(1).
[16] See State v. Arms (Jan. 4, 1982), Meigs App. No. 314, unreported.
[17] Belden v. Union Central Life Ins. Co. (1944), 143 Ohio St. 329,55 N.E.2d 629, paragraph six of the syllabus.
[18] See Washington v. Davis (1976), 426 U.S. 229, 242,96 S.Ct. 2040, 2049.
[19] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[20] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.