This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Michael Boles, ("Boles") appeals a jury verdict finding him guilty of three counts of contaminating a substance for human consumption, a first degree felony in violation of R.C. 2927.24(B), and the trial court's sentence of three concurrent three year prison terms. The issues before us are: 1) whether R.C. 2927.241(B) is unconstitutionally vague in violation of due process, and; 2) whether the trial court erred in its response to a question posed by the jury during its deliberations. For the following reasons, we hold the statute is constitutional, and the trial court did not err in its response to the jury's query. Accordingly, we affirm the decision of the trial court.
On or about June 18, 1997, Boles was working in food preparation at McDonald's restaurant in Bellaire, Ohio. Boles knew a Shadyside police officer, later identified as Jeff Loeffler, had placed an order in the drive-thru. At the time of the incident, Boles was using an oral medication known as Orajel to heal sores in his mouth. He admits he applied Orajel on the hamburgers ordered by the police officer. The assistant-manager, Olga Watkins, testified Boles commented about Officer Loeffler, "I hate that guy. He's a dick. He was there the last time I got arrested." (Tr. p. 120). Ms. Watkins also testified about Boles' attitude when police officers in general used the drive-thru, stating "* * * [A]ny time or most times when the police would come through, he would make derogatory comments or threatening comments in general about police. He just didn't like them." (Tr. p. 124). She also testified she "* * * heard him make some comments about if he would see someone off-duty, he would kick their ass, if he would catch up with them in a dark alley or whatever." (Tr. p. 125).
Officer Loeffler took the food back to a Shadyside convenience store/auto garage to share with three others; off duty police officer Donald Collette, Thomas Neil, and Lewis Craig Collins, all of whom began to eat the hamburgers. The three who consumed the hamburgers all suffered varying degrees of numbness in the mouth. Appellant claims his intention was not to cause harm, but rather to play a prank.
Officer Collette testified his mouth and lips became numb. He described the feeling as "* * * tingling, stinging, like numbness" on his lips, roof of his mouth and the back of his throat. (Tr. p. 61). In the evening after consuming the food, he vomited. Officer Collette went to a doctor the following day, was tested for HIV and hepatitis, and began seeing a psychologist and psychiatric doctor. Feeling did not return to his mouth for three hours after eating the hamburgers, during which time he testified he was "* * * scared to death." (Tr. p. 64). Thomas Neil testified that his, "* * * whole mouth was numb." (Tr. p. 79). He was nauseous until the next morning, when he went to a doctor for tests. After biting into a hamburger, Lewis Craig Collins testified that his lips, tongue and roof of his mouth went numb and he felt "* * * a little ill." (Tr. pp. 91, 93). The following day Mr. Collins went to his doctor for examination. At the time of the trial, he was still seeing his doctor once a month for blood tests and was seeing a therapist and psychologist weekly.
Boles could have received ten years imprisonment and a $20,000 fine for each count. Instead, he was sentenced to the minimum term of three years to run concurrently and reimbursement of costs. The court took into account appellant's prior criminal history, which included four DUI's, a hit skip, and an obstruction of justice charge. These were weighed against the fact Boles had never previously been to the penitentiary, his age, and family situation. The court rejected community control sanctions as it would demean the seriousness of the offenses and not adequately punish the offender, noting Boles' apparent lack of remorse up until the day of sentencing, and would not protect the public from future crime. Ultimately, the court determined the public had to be confident that acts like those committed by Boles will be punished.
At sentencing, Boles' only statement to the court was he rejected a plea bargain because he didn't believe Orajel was harmful, and feared a felony record would prohibit him from being awarded custody of his sons.
Boles appeals the jury verdict and the trial court's sentence, raising two assignments of error: 1) R.C. 2927.24(B) is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution; and, 2) the trial court improperly responded to a question from the jury. We find both assignments of error to be without merit and affirm the decision of the trial court, because we conclude the statute gives sufficient warning that the conduct engaged in by Boles was illegal, and the trial court's response to the jury question was not prejudicial.
The jury found Boles guilty of three counts of violating R.C. 2927.24(B) which provides in pertinent part:
 "[N]o person shall knowingly mingle a poison or harmful substance with food, drink, nonprescription drug, or pharmaceutical product * * * if the person knows or has reason to know that the food, drink, nonprescription drug, prescription drug, or water may be ingested or used by another person."
In his first assignment of error, Boles argues the statute is unconstitutionally vague in violation of the Due Process Clause of theFifth Amendment to the U.S. Constitution, because the term "harmful substance" is not defined anywhere in the Revised Code, and therefore, it was up to the jury to determine whether Orajel constituted a harmful substance. Boles claims nobody could possibly know what would be a first-degree felony and what would qualify as a prank, because the phrase "harmful substance" is never defined. He therefore claims the statute should be struck down as an unconstitutional violation of due process because of the alleged overly broad language.
The State responds that there is "no guesswork as to the type of conduct the General Assembly is seeking to prohibit with Ohio Revised Code Sec. 2927.24(B)". Placing Orajel on food is not a proper use of such product, and therefore is likely to cause injury or harm when mixed with food or drink. In fact, the statute only requires that the harmful substance "may" be "mingled" or "used," actual consumption is not required under the statute.
As a preliminary matter, we note although Boles frames his due process argument in terms of the Fifth Amendment, he has missed a step in the analysis. The Fifth Amendment Due Process Clause of the United States Constitution is only applicable to the Federal government. Its protections are extended to the States via the Fourteenth Amendment, prohibiting state governments from depriving any person of "life, liberty, or property, without due process of law." State v. Williams
(1983), 6 Ohio St.3d 281, 285; see also United States v. Argus (1976),427 U.S. 97, 111. Such rights are "implicit in the concept of ordered liberty" and necessary to "maintain a fair and enlightened system of justice." Palko v. State of Connecticut (1937), 302 U.S. 319, 325. Although states may afford individuals greater rights, states cannot deprive individuals of rights guaranteed by the Federal Constitution.State v. Robinette (1997), 80 Ohio St.3d 234, 238. Thus, Boles' assertedFifth Amendment right to due process is actually guaranteed by theFourteenth Amendment and we will review this issue accordingly.
We begin our analysis with the proposition that there is a strong presumption in favor of the constitutionality of statutes, and the party challenging the statute must prove it is unconstitutional beyond a reasonable doubt. State v. Smith (Feb. 11, 1998), Mahoning App. No. 96-CA-83, unreported; State v. Anderson (1991), 57 Ohio St.3d 168. The Ohio Supreme Court has held that the Due Process Clause of theFourteenth Amendment to the United States Constitution dictates a criminal statute must be sufficiently definite "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute."State v. Earlenbaugh (1985), 18 Ohio St.3d 19, 21 quoting United Statesv. Harriss (1954), 347 U.S. 612, 617. The Fourteenth Amendment Due Process Clause forbids a state from holding a person criminally liable for conduct that he could not reasonably understand to be illegal.Earlenbaugh, supra.
The constitutional requirement of definiteness does not require that a statute fail simply because it could have been written more precisely.Earlenbaugh, supra. The Due Process Clause of the Fourteenth Amendment only requires the law give sufficient warning so individuals may act in such a way as to avoid conduct that is forbidden. Earlenbaugh, supra. The test is whether the language of the statute conveys a warning that sufficiently conveys what will be considered illegal conduct when measured by common understanding and practices. State v. Reeder (1985),18 Ohio St.3d 25, 26.
In State v. Davidson (Dec. 30 1998), Mahoning App. No. 96-CA-136, unreported, this court, relying on Harriss, held "[w]e are obligated to indulge every reasonable interpretation favoring the ordinance in order to sustain it," and adopted the following standard when determining whether a statute is unconstitutionally vague: the constitutional requirement of definiteness is violated when a criminal statute fails to give a person of ordinary intelligence fair notice that his conduct is forbidden. Davidson, supra. When applying this standard of review to the statutory language at issue, "words in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them." Davidson, supra, quoting State v. Dorso (1983),4 Ohio St.3d 60, consistent with R.C. 1.42, which requires that words and phrases used within the Revised Code must be read in context and construed according to the rules of grammar and common usage. Davidson,supra.
When determining whether Orajel is a harmful substance under the statute, a person of ordinary intelligence can easily discern that itsimproper use can result in harm. The officers who consumed the altered hamburgers did consult with a physician because they were concerned about their health. The risk of harm from Orajel was made clear by the testimony of Dr. Alfred Staubus, an expert witness with a degree in pharmacology. Dr. Staubus testified Orajel is a harmful substance if used with food or otherwise used inappropriately. The package has instructions which state: "In case of accidental overdose, seek professional assistance, or contact Poison Control Center immediately." (Staubus Dep. Tr. p. 28). He also testified that a person with known allergies to other local anesthetics should not use Orajel and one should not consume food for one hour after the use of Orajel because of the risk of aspiration, which is the swallowing or intake of food or liquid into the lungs. Because Orajel numbs the lips, tongue, throat and/or the esophagus, it affects an individual's "gag reflex", causing them to choke on food and/or fluids, which blocks the bronchial tube or enters the lungs. A person of average intelligence should have little difficulty understanding that Orajel should not be misused.
Orajel is safe to use when it is used properly. Conversely, common sense dictates it is harmful to mix with food, especially when done in a covert manner on food to be consumed by others, as was done by Boles. Common sense, along with labeling, dictates that one should never mix medication, whether it is prescription or over-the-counter, with food or drink unless a patient is explicitly directed to do so by a physician. People of ordinary intelligence know all medications can be harmful substances when used improperly. If they were not harmful, they would not be controlled by regulatory agencies, or come with extensive instructions indicating only a certain amount should be used, as well as where and how it should be used.
Reviewing R.C. 2927.24(B) in its entirety, a person of ordinary intelligence is able to discern what type of conduct is prohibited. The constitutional requirement of due process imposed upon the State by theFourteenth Amendment has been met. Boles had sufficient notice that the misuse of Orajel was likely to cause harm, conduct which R.C. 2927.24(B) seeks to prevent. Boles' first assignment of error is therefore without merit.
In his second assignment of error, Boles alleges the trial court erred when it improperly answered a question posed by the jury during deliberations over objection of defense counsel. During deliberations, the jury posed a question to the trial court as follows:
 "Are we to determine whether or not Orajel is a harmful substance? Or harmful in the quantities ingested as applied by * * * Mr. Boles?"
The trial court answered the question over the objection of counsel for Boles and the state, as follows:
 [T]he jury instruction states at introduction to issues, `[T]hat harmful substance is one the five elements of each offense which the — with which the defendant is charged. You must find beyond a reasonable doubt that Orajel was a harmful substance when mingled with food, i.e. the hamburger ingested by each alleged victim."
Boles argues because the statute does not indicate that the amount of the substance used is important, the instructions given by the trial court make the statute a result-oriented statute. Boles suggests that, based on the statute, the issue should have been whether Orajel was a harmful substance regardless of whether it was or was not mixed with food, and not as the trial court posed the issue, whether Orajel is a harmful substance when mixed with food. The State asserts Boles was not prejudiced as a result of the jury instructions given by the trial court, as the conviction was consistent with the evidence produced at trial. In addition, the State argues the jury was not confused because the jury instructions as a whole were not misleading so as to cause the jury to lose its way during deliberations.
A trial court has discretion in formulating its response when a jury is deliberating and requests further instruction or clarification of previously given instructions. State v. Carter (1995), 72 Ohio St.3d 545, paragraph one of the syllabus. Accordingly, the standard of review is abuse of discretion. State v. Bigsby, (May 15, 2000), Jefferson App. No. 96-JE-52, unreported. An abuse of discretion connotes more than an error of law or judgment; it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams, (1980)62 Ohio St.2d 151,157. Thus, a judgment will not be reversed based on the jury charge absent an abuse of discretion.
In examining alleged errors in a jury instruction, a reviewing court must consider the jury instructions as a whole, and must determine whether such instruction probably misled the jury in a matter materially affecting the complaining party's substantial rights. Crest Polymers,Inc. v. Travis Products, Inc. (May 4, 2000), Mahoning App. No. 98-CA-245, unreported; see Kokita v. Ford Motor Co. (1995),73 Ohio St.3d 89, 93. A conviction will not be reversed if a trial court's response to a jury instruction is incomplete, confusing or misleading, absent prejudice to the defendant. State v. Porter (1968),14 Ohio St.2d 10, paragraph three of the syllabus.
In the present case, Boles did not suffer any prejudice as a result of the trial court's response to the jury's question. After viewing the entire record, Boles' conviction was consistent with the evidence produced during the trial. It cannot be said the trial court acted unreasonably, arbitrarily, or unconscionably when it supplemented the jury instructions. Moreover, it cannot be said the jury lost its way. The jury instructions as a whole were not so misleading as to confuse the jury during its deliberations. Boles admitted he put Orajel on the hamburgers. Dr. Staubus testified Orajel was a harmful substance when put on food. Lastly, there was testimony of the harm Boles caused by his conduct. The trial court did not prejudice Boles by the manner in which it responded to the jury's query. The trial court reiterated the question of fact to be resolved: whether Orajel was a harmful substance when mingled with food. As the trial court did not abuse its discretion, Boles' second assignment of error is meritless.
For the foregoing reasons, as we find Boles' assignments of error to be meritless, the decision of the trial court is affirmed.
DONOFRIO, J., Concurs in judgment only.
WAITE, J., Concurs.