OPINION
Defendant-appellant Robert H. Roberts appeals his conviction in the Dayton Municipal Court for Public Indecency based upon a finding that he masturbated in a public theater. He contends that the State did not present sufficient evidence, and that his conviction is against the manifest weight of the evidence.
From our review of the record, we conclude that the trial court erred, in a manner prejudicial to Roberts, in its construction of the phrase "is likely to be viewed by and affront others" as used in R.C. 2907.09(A), which proscribes the offense of which Roberts was convicted. Accordingly the judgment of the trial court is Reversed, and this cause is Remanded
for further proceedings in accordance with this opinion.
 I
About 9:00 p.m., one February evening in 2001, Dayton Vice Detectives entered an adult movie theater, described as showing heterosexual pornographic movies, in response to complaints regarding sexual activity occurring within the theater. Upon entering the theater, Detective Knight observed Roberts expose his penis and masturbate until he ejaculated upon a wooden partition. There were approximately twenty-five other patrons in the theater, all of whom were men. Roberts was taken into a back room in the theater where he admitted that he had masturbated, saying that he had done so to compensate for a lack of sexual relations with his wife.
Roberts was charged with one count of Public Indecency, in violation of R.C. 2907.09(A)(1) for engaging in masturbation in a public theater. Following a bench trial, Roberts was found guilty as charged, and was sentenced accordingly. From his conviction and sentence, Roberts appeals.
 II
Roberts' assignments of error are as follows:
 "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL AT THE CONCLUSION OF THE STATE'S CASE.
 "MR. ROBERTS' CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Roberts' arguments center upon his claim that the State failed to present evidence sufficient to demonstrate the requisite elements of Public Indecency and that the evidence does not support the conviction.
Pursuant to Crim.R. 29(A), a judge "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "[A] a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus. When considering whether the evidence is sufficient, a judge views the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
In reviewing a manifest weight claim, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
The relevant elements of Public Indecency are set forth in R.C.2907.09(A) as follows:
 "(A) No person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household:
 "(1) Expose his or her private parts, or engage in masturbation; * * *
"Recklessly" is defined under R.C. 2901.22(C) as follows:
 "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
In the case before us, the only issue raised before the trial court was whether the State proved Roberts' behavior was likely to affront others. The trial court found that every other material element had been demonstrated beyond a reasonable doubt.
Roberts' conduct occurred in a public theater. Detective Knight testified that, upon entering the theater, he was able to see Roberts engaging in masturbatory behavior. There was evidence that there were approximately twenty-five other patrons in the theater. As the officer walked to within one foot of Roberts, he observed Roberts continue "masturbating furiously" to the point of ejaculation.
Given that the record demonstrates that Roberts could be seen immediately by anyone entering the theater, and that he continued to engage in the behavior during the time the officer approached him, we agree with the trial court that the evidence in the record is sufficient to prove that Roberts recklessly engaged in masturbation in a place where he was likely to be viewed by others.
However, with regard to the question of whether the behavior would affront others, we find that the trial court erred in utilizing the standard of "men of common intelligence." In support of its use of this standard, the trial court relied upon the following cases: State v.Lamey (Nov. 27, 1984), Union App. No. 14-83-12, unreported; State v.White (Aug. 14, 1986), Union App. No. 14-83-15, unreported; City v.Abdalla (April 30, 1998), Franklin App. 97APC08-973, reported; and Statev. Dorso (1983), 4 Ohio St.3d 60.
We find all of the cases cited by the trial court distinguishable. All three court of appeals cases rely upon the holding in Dorso, supra, for the proposition that the appropriate standard is that of men of common intelligence. However, we note that Dorso did not involve the Public Indecency statute at issue here. Instead, it involved a determination of the constitutionality of Section 910-9 of the Cincinnati Municipal Code, a noise ordinance, which provides as follows:
 "No person, association, firm or corporation, operating a restaurant, hotel, summer garden or other place of refreshment or entertainment, shall permit, nor shall any person in or about such restaurant, hotel, summer garden or other place of refreshment or entertainment engage in the playing or rendition of music of any kind, singing, loud talking, amplification of sound, or other noises on or about the premises, in such manner as to disturb the peace and quiet of the neighborhood, having due regard for the proximity of places of residence, hospitals or other residential institutions and to any other conditions affected by such noises."
The ordinance was challenged as being unconstitutionally vague because it did not define the word "neighborhood." Dorso, supra, at 62. The Ohio Supreme Court, in construing the word "neighborhood," held that the ordinance prohibited the playing of music and amplification "in a manner which could be anticipated to offend the reasonable person, i.e., the individual of common sensibilities." Id. at 64.
In the case before us, the issue is the meaning of the phrase "is likely to be viewed by and affront others." This conjunctive phrasing suggests that rather than using a reasonable person or man of common intelligence standard, the statute contemplates a determination whether individuals who are likely to view the conduct would likely be affronted if they see it. Those persons would consist of persons who patronize the type of business establishment that Roberts was in, not the generic "reasonable man." We note that the commentary to the statute states that persons who frequent a nudist camp are not likely to be offended by the nudity of others around them. This statement supports our holding.
In its written decision, the trial court separated the two determinations. The trial court first found that others were likely to view Roberts' conduct, a finding with which we have no disagreement, and then found that a person of common intelligence would be affronted upon viewing that conduct. If this were a correct analysis, the second prong would be redundant. The sexual conduct described in the statute would always be offensive to a person of ordinary sensibilities. The only apparent reason for the second prong is that it is not independent of the first, but that the test is whether those likely to view the conduct are likely to be affronted by it.
In applying the correct analysis, we conclude, based upon the evidence in this record, including reasonable inferences, that a reasonable factfinder could find it likely that a patron of the theater, while desiring to watch a heterosexual pornographic movie, would be affronted upon observing another patron masturbating near him. As the prosecutor pointed out in oral argument in this case, although she enjoys watching murder mystery movies, she would be affronted upon watching a murder being committed in a seat near her in the theater.
Although the trial court might have found, from the evidence in this record, that there were persons likely both to view Roberts' conduct and to be affronted by it, the trial court did not base Roberts' conviction upon that finding. Although we reject Roberts' contentions that the evidence in the record is insufficient to support a finding of guilt and that a finding of guilt is against the manifest weight of the evidence, we agree with him that the trial court misapplied the law when making the finding of guilt that it did. To that limited extent, Roberts' Second Assignment of Error, that his conviction is against the manifest weight of the evidence, is sustained. His First Assignment of Error, that the trial court erred in denying his motion for judgment of acquittal, is overruled.
 III
Roberts' First Assignment of Error having been overruled, and his Second Assignment of Error having been sustained, to the limited extent indicated in this opinion, the judgment of the trial court is Reversed,
and this cause is Remanded for reconsideration of the trial court's verdict applying the correct construction of the Public Indecency statute. Should the trial court determine itself unable to comply with the mandate of this court without holding a new trial, it may do so, but it is not required to hold a new trial.
GRADY and YOUNG, JJ., concur.