DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, Charlie Rivera-Rodriguez and Josue Rivera-Rodriguez, appeal from their convictions in the Lorain County Court of Common Pleas. We affirm in part and reverse in part.
 I. {¶ 2} On the morning of November 1, 2005, Appellants Charlie Rivera-Rodriguez ("Charlie") and/or his brother, Josue Rivera-Rodriguez ("Josue"), were observed breaking the front door of Israel Dominguez's apartment located at 1701 *Page 2 
East 29th St. in Lorain. The men damaged the door, leaving a hole slightly larger than 12 inches by 12 inches. After damaging the door, the two men left the building.
 {¶ 3} Charlie returned to the scene about two hours later. At that time, he spoke with Mr. Dominguez, offering to pay for the repairs to the door if Mr. Dominguez agreed not to alert the police. The police were called and Charlie was detained and later arrested.
 {¶ 4} Shortly thereafter, police brought Josue to the scene. The police had already arrested Josue and had detained him in a police cruiser. A few residents of the apartment complex and a Lorain police detective testified that while Josue was seated in the back seat of the police cruiser, he made threatening gestures to residents of the apartment complex.
 {¶ 5} On December 22, 2005, Charlie was indicted on one count of aggravated burglary, a violation of R.C. 2911.11, a felony of the first degree with a firearm specification, and one count of intimidation, a violation of R.C. 2921.03, a felony of the third degree. On this same day, Josue was indicted on one count of aggravated burglary, a violation of R.C. 2911.11, a felony of the first degree with a firearm specification; one count of intimidation, a violation of R.C. 2921.03, a felony of the third degree, and one count of having a weapon while under disability, a violation of R.C. 2923.13, a felony of the third degree with a firearm specification. *Page 3 
 {¶ 6} On March 20, 2007, the brothers each filed motions to consolidate their cases. On March 30, 2007, the trial court granted the motions. The case proceeded to a bench trial on April 2, 2007. On April 13, 2007, the trial court entered judgment finding Charlie guilty on all counts and specifications. Charlie was sentenced to an aggregate term of seven years in prison. On this same day, the trial court entered judgment finding Josue guilty of aggravated burglary, with the gun specification, and intimidation. The trial court acquitted Josue of having a weapon while under disability. Josue was also sentenced to an aggregate term of seven years in prison. Both defendants timely appealed their convictions. Charlie has raised five assignments of error for our review. Josue has raised one assignment of error for our review. We have consolidated some of the assignments of error to facilitate our review.
 II. CHARLIE'S ASSIGNMENT OF ERROR I "THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION FOR AGGRAVATED BURGLARY IN COUNT ONE."
 CHARLIE'S ASSIGNMENT OF ERROR II "THE CONVICTION FOR AGGRAVATED BURGLARY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 JOSUE'S ASSIGNMENT OF ERROR "THE VERDICT IN THIS CASE IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND *Page 4 
SHOULD BE REVERSED BECAUSE IT VIOLATES THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 7} In his first and second assignments of error, Charlie claims that his conviction for aggravated burglary is against the manifest weight of the evidence and insufficient evidence was produced to establish his conviction. An evaluation of the sufficiency of the evidence is dispositive.
 {¶ 8} In his sole assignment of error, Josue argues that the verdict is against the manifest weight of the evidence and sufficiency of the evidence and should be reversed because it violates theFourteenth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 9} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. *Page 5 
 {¶ 10} Because we find that insufficient evidence was produced to establish Charlie and Josue's convictions for aggravated burglary, we sustain their assignments of error regarding sufficiency and limit our discussion accordingly.
 {¶ 11} To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all of the evidence in a light most favorable to the State, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Thompkins, 78 Ohio St.3d at 386.
Aggravated Burglary
 {¶ 12} Both Charlie and Josue argue that their convictions for aggravated burglary were unsupported by sufficient evidence. Both defendants were convicted under R.C. 2911.11(A), which provides:
 "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 13} Several witnesses testified on behalf of the State including a few City of Lorain police officers and Mr. Dominguez's neighbor and cousin, Luis Cruz. Mr. Dominguez did not testify at trial. Mr. Cruz testified that on November 1, 2005, Charlie and Josue approached Mr. Dominguez's apartment in *Page 6 
the possession of firearms. Mr. Cruz testified that he heard a loud boom and opened his door to investigate. He further explained:
 A: "I opened the door, I didn't open it all the way, I just cracked it and peeked through and I seen the guy kick the door open and put his gun out, and then his other brother or whoever he is was standing right next to the side of the door with the rifle.
 Q: "Okay. So you say somebody was there with a rifle; did the other individual, was he holding anything?
 A: "Yeah. He was, when he kicked the door open, made a hole where you kicked it open, and he had, he was putting the gun-
 Q: "Okay. What type of gun was that?
 "* * *
 Q: "One was a handgun, one was a rifle?
 A: "Yes."
Mr. Cruz proceeded to identify Josue and Charlie. He also testified that he closed his door after he observed their actions and then he heard them run down the stairs.
 {¶ 14} The record reflects that Officer Kopronica testified regarding his conversation with Mr. Cruz and Mr. Dominguez after the incident occurred. However, the trial court excluded Officer Kopronica's testimony concerning Mr. Dominguez's recitation of the events. The trial court explained that "[a]dmitting this portion of Officer Kopronica's testimony would violate [the co-defendants'] Constitutional rights to confront witnesses under the Sixth and *Page 7 Fourteenth Amendment of the U.S. Constitution." No one has challenged the exclusion of this testimony on appeal.
 {¶ 15} A thorough review of the transcript reveals that the testimony from Mr. Cruz was the only admissible testimony regarding the incident at Mr. Dominguez's apartment. This testimony failed to establish that either defendant committed aggravated burglary. For purposes of aggravated burglary, trespass includes knowingly entering or remaining on the land or premises of another without privilege to do so. R.C.2911.21. Even if we assume, without deciding, that the force necessary to kick a 12 inch by 12 inch hole in the door necessarily included someone's foot crossing the plain of the door resulting in a trespass, there is absolutely no testimony in the record to identify which defendant kicked in the door. Here, Mr. Cruz's testimony did not establish that either Josue or Charlie trespassed. More importantly, Mr. Cruz's testimony failed to establish which brother kicked the door in and which brother stood beside the door holding a gun. The prosecutor interrupted Mr. Cruz before he could finish his statement that one of the brothers "was putting the gun-" somewhere. Perhaps Mr. Cruz would have testified that one of the brothers was placing the gun in the hole. However, Mr. Cruz only testified that he saw "the guy kick the door open and put his gun out" and that he saw the brother standing next to the door holding a gun. Even if Mr. Cruz completed his statement regarding where the brother placed the gun, he failed to specify which brother kicked the door in and which one stood beside the *Page 8 
door. Without more, the State cannot establish the first element of aggravated burglary — trespass.
 {¶ 16} The dissent contends on this issue that the aggravated burglary convictions should be affirmed because each brother was complicit in the actions of the other. This issue was neither briefed nor argued by either party before the trial court or before this Court on appeal. We find it improvident for this Court to develop legal arguments that the State could have raised.
 {¶ 17} After viewing all of the evidence in a light most favorable to the State, we find that no rational trier of fact could have found the essential elements of aggravated burglary proven beyond a reasonable doubt. Thompkins, 78 Ohio St.3d at 386.
Intimidation
 {¶ 18} Both Josue and Charlie were convicted of intimidation under R.C. 2921.03(A). We address Charlie's conviction for intimidation in our disposition of his third and fourth assignments of error. Therefore, we will address Josue's claim that his conviction for intimidation was against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 19} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a *Page 9 
manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 20} Josue was convicted of intimidation under R.C. 2921.03(A), which provides:
 "No person, knowingly and by force, by unlawful threat of harm to any person or property, * * * shall attempt to influence, intimidate, or hinder a * * * witness in the discharge of the person's duty."
 {¶ 21} Josue's intimidation conviction was based on a gesture he made while seated in the back of a police cruiser on November 1, 2005, after he was arrested. A few witnesses testified at trial regarding Josue's gesture. Karen Hopkins, Mr. Cruz's sister, testified that she and some other individuals were standing outside the police cruiser in which Josue was seated. She testified that Josue made a threatening gesture towards the people standing around the cruiser. According to Ms. Hopkins, Josue "[p]ut his hand up to his throat." She explained that this gesture meant that someone would get hurt.
 {¶ 22} Ms. Hopkins also testified that she had called the police after she observed either Josue or Charlie run out of the apartment building carrying what appeared to be a rifle. She testified that this individual shot off one round as he ran towards a cream-colored four-door vehicle. This individual then got into the car and the car left the complex. *Page 10 
 {¶ 23} Detective Ralph Gonzalez also testified regarding Josue's gesture. Detective Gonzalez testified that when he arrived at the apartment complex, he observed two police cruisers. He saw an individual, later identified as Charlie, seated in the backseat of one of the cruisers. He explained that during the course of the investigation, the officers discovered that there was a second individual, Charlie's brother, Josue, who was also involved in the incident. A few other officers eventually located Josue and brought him to the scene. Detective Gonzalez observed Josue seated in the backseat of one of the officer's cruisers. Detective Gonzalez testified that he observed Josue make a motion underneath his throat and then point to the crowd of people gathered nearby. He stated that the crowd started shouting that Josue was threatening them. Detective Gonzalez testified that Mr. Dominguez was situated about 30 yards from the cruiser. Detective Gonzalez approached Josue and informed him that he must not make that motion again.
 {¶ 24} In State v. Crider (1984), 21 Ohio App.3d 268, 269, we explained that the purpose of the intimidation statute is "to protect those people who saw, heard or otherwise knew, or were supposed to know, material facts about the criminal proceeding." We further explained that "[o]nce a person becomes possessed of such material facts, he likewise becomes a `witness' within the meaning of R.C. 2921.03, and subject to its protection." Id. While the intimidation statute does not provide a definition of "witness", this Court has *Page 11 
defined "witness" for intimidation purposes as a person who has factual knowledge relevant to the proceedings. Id.; State v. Hudson (June 30, 1982), 9th Dist. No. 10491, at *3. Accordingly, we find that Mr. Dominguez and/or Ms. Hopkins constituted witnesses for intimidation purposes.
 {¶ 25} R.C. 2921.03(A) does not define "unlawful threat". In the absence of a statutory definition, a term "is to be accorded its common, everyday meaning." State v. Dorso (1983), 4 Ohio St.3d 60, 62. Black's Law Dictionary defines "unlawful" as "[n]ot authorized by law; illegal" or "criminally punishable[.]" Black's Law Dictionary (8 Ed. 2004) 1574.
 {¶ 26} Pursuant to R.C. 2903.22(A), which proscribes menacing, "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, * * * or a member of the other person's immediate family." Under the unique circumstances surrounding this incident wherein police were present at the scene, Josue was in custody in the backseat of a police cruiser, several witnesses were standing around the police cruisers, and Josue made a threatening gesture towards the crowd, we find that Josue's actions constituted an unlawful threat for purposes of intimidation — i.e. menacing. Josue's gesture is commonly understood as throatslashing. See United States v. Balzano (C.A.7 1990),916 F.2d 1273, 1291-92 (defendant intimidated witness who was about to give damaging testimony where defendant made a hand gesture mimicking the slashing of a throat and the threat of *Page 12 
a gun). Given the context in which Josue made this gesture, the witnesses, Mr. Dominguez and Ms. Hopkins, could have believed that he intended to slash their throats if they cooperated with the police. Therefore, we find that Josue's conviction for intimidation is supported by the manifest weight of the evidence. As this Court has disposed of Josue's challenge to the weight of the evidence regarding his intimidation conviction, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2.
 {¶ 27} Accordingly, Charlie's first assignment of error is sustained. Charlie's second assignment of error is rendered moot. Josue's sole assignment of error is overruled in part and sustained in part.
 CHARLIE'S ASSIGNMENT OF ERROR III "THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION FOR INTIMIDATION IN COUNT TWO[.]"
 CHARLIE'S ASSIGNMENT OF ERROR IV "THE CONVICTION FOR INTIMIDATION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 {¶ 28} In his third and fourth assignments of error, Charlie asserts that his conviction for intimidation is against the manifest weight of the evidence and insufficient evidence was produced to sustain his conviction. As with Charlie's conviction for aggravated burglary, an evaluation of the sufficiency of the evidence is dispositive. *Page 13 
 {¶ 29} Charlie's intimidation conviction was based on the testimony of Mr. Cruz, because the victim, Mr. Dominguez, did not testify at trial. The record reflects only that Charlie offered to pay to repair Mr. Dominguez's door if Mr. Dominguez refrained from notifying the police of his actions. Mr. Cruz's testimony failed to establish that Charlie used "force" or an "unlawful threat of harm" to "influence, intimidate, or hinder a * * * witness [Mr. Dominguez][.]" While this evidence may support a conviction for bribery, under R.C. 2921.02, the record reflects that Charlie was not indicted on bribery charges.
 {¶ 30} Notably, the State concedes that Charlie's intimidation conviction is not supported by sufficient evidence or the manifest weight of the evidence and urges that his conviction for intimidation must be reversed.
 {¶ 31} Charlie's third assignment of error is sustained. Accordingly, Charlie's fourth assignment of error is rendered moot.
 CHARLIE'S ASSIGNMENT OF ERROR V "THE TRIAL COURT ERRONESOULY IMPOSED A SENTENCE THAT VIOLATED BLAKELY V. WASHINGTON (2004), 542 U.S. 296, AND ITS PROGENY BECAUSE IT IMPOSED A SENTENCE EXCEEDING MINIMUM AND CONCURRENT TERMS OF IMPRISONMENT."
 {¶ 32} In his fifth assignment of error, Charlie argues that the trial court erroneously imposed a sentence that violated Blakely v.Washington (2004), 542 U.S. 296, and its progeny because it imposed a sentence exceeding minimum and concurrent terms of imprisonment. *Page 14 
 {¶ 33} Our disposition of Charlie's first and third assignments of error renders his fifth assignment of error moot.
 III. {¶ 34} Charlie's first and third assignments of error are sustained. Charlie's second, fourth and fifth assignments of error are moot. Josue's sole assignment of error is overruled in part and sustained in part. The judgment of the Lorain County Court of Common Pleas is reversed in part and affirmed in part and the cause is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 15 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Josue Rivera-Rodriguez and the State equally.
DICKINSON, J. CONCURS