[Cite as *State v. Elton*, 2024-Ohio-1494.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

STATE OF OHIO                         :
                                      :
        Appellee                      :   C.A. No. 2023-CA-62
                                      :
v.                                    :   Trial Court Case No. 23 TRD 01671
                                      :
BRACY HAMILTON ELTON                  :   (Criminal Appeal from Municipal Court)
                                      :
        Appellant                     :
                                      :

. . . . . . . . . . .

O P I N I O N

Rendered on April 19, 2024

. . . . . . . . . . .

STEVEN M. MAGAS, Attorney for Appellant

DANIELLE E. SOLLARS, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

        **{¶ 1}** Appellant, Bracy Hamilton Elton, appeals from his conviction in the Xenia Municipal Court for violating R.C. 4511.55(A), which, among other things, requires bicyclists to ride their bicycles "as near to the right side of the roadway as practicable." In support of his appeal, Elton contends that R.C. 4511.55(A) is unconstitutionally vague. Elton also contends that the trial court erred as a matter of law and ruled against the

manifest weight of the evidence by failing to find that an exception in R.C. 4511.55(C) relieved him of the obligation to ride as near to the right side of the roadway as practicable. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On May 13, 2023, Officer Joshua Lacy of the Sugarcreek Township Police Department issued Elton a traffic citation for violating R.C. 4511.55(A). That statute requires, in relevant part, "[e]very person operating a bicycle or electric bicycle upon a roadway [to] ride as near to the right side of the roadway as practicable[.]" R.C. 4511.55(A). At the time of the alleged violation, Elton was riding a velomobile, which is a three-wheeled bicycle car propelled solely by human power. The parties do not dispute that Elton's velomobile is considered a bicycle under Ohio Law and that R.C. 4511.55(A) applies to cyclists riding velomobiles on roadways.

{¶ 3} At his arraignment, Elton pled not guilty to violating R.C. 4511.55(A). The matter proceeded to a bench trial on August 9, 2023. During trial, the State called Ofc. Lacy to testify regarding the charged violation. Elton, who was represented by counsel, also testified at trial. The following is a summary of the trial testimony.

{¶ 4} At approximately 1:00 p.m. on May 13, 2023, Ofc. Lacy was driving east on Centerville Road in Sugarcreek Township, Ohio, when he came upon slow moving traffic that was almost completely stopped. Tr. 3. As he approached the traffic, Lacy observed that the slowdown was due to vehicles having to pass a velomobile that was traveling 15 miles per hour on Centerville Road. Tr. 4-5. During that time, the

velomobile was traveling on a portion of Centerville Road that had two-lanes of travel, a double-yellow centerline, and white fog lines located on the far right and left sides of the roadway.   Tr. 3-4.

{¶ 5} Ofc. Lacy testified that the cyclist riding the velomobile, later identified as Elton, was operating the velomobile approximately three feet from the double-yellow centerline, which caused the vehicles passing it to go into the opposite lane of travel.   Tr. 6.   Lacy also testified that, despite there being enough space for Elton to move over to the right and allow traffic to pass, Elton was operating his velomobile in the middle of the roadway closer to the double-yellow centerline.   Tr. 12, 28.

{¶ 6} After seeing the position of Elton's velomobile in the roadway, Ofc. Lacy activated the overhead lights on his police cruiser and conducted a traffic stop.   Tr. 6-7. Lacy testified that his initial purpose in conducting the traffic stop was to issue a warning to Elton and to educate him about the law and dangers associated with riding his velomobile that far into the lane of travel.   Tr. 7.   However, because Elton continually interrupted Lacy during the stop and argued that the law Lacy cited did not apply to him, Lacy decided to issue a citation to Elton for violating R.C. 4511.55(A).   Tr.   7-8, 12-13.

{¶ 7} As Ofc. Lacy was testifying, it became clear that the officer was under the mistaken impression that the law specifically required Elton to operate his velomobile within three feet of the roadway's fog line.   During Lacy's cross-examination, it was clarified that no such requirement existed under R.C. 4511.55(A), which simply requires bicyclists to "ride as near to the right side of the roadway as practicable[.]"   R.C. 4511.55(A).   Tr. 13.   In light of that clarification, Lacy agreed that the citation he issued

Elton for violating R.C. 4511.55(A) charged Elton with failing to ride his velomobile as near to the right side of the roadway as practicable, not for failing to ride within three feet from the roadway's fog line.   Tr. 13.

{¶ 8} Continuing, Ofc. Lacy testified that during the traffic stop in question, Elton had argued that pursuant to R.C. 4511.55(C), the requirement for bicyclists to ride as near to the right side of the roadway as practicable did not apply to him.   Tr. 26.   The language of R.C. 4511.55(C) was read at trial and states as follows:

[R.C. 4511.55] does not require a person operating a bicycle or electric bicycle to ride at the edge of the roadway when it is unreasonable or unsafe to do so.   Conditions that may require riding away from the edge of the roadway include when necessary to avoid fixed or moving objects, parked or moving vehicles, surface hazards, or if it otherwise is unsafe or impracticable to do so, including if the lane is too narrow for the bicycle or electric bicycle and an overtaking vehicle to travel safely side by side within the lane.

R.C. 4511.55(C); Tr. 22.

{¶ 9} Ofc. Lacy testified that he did not agree that R.C. 4511.55(C) had applied to Elton.   Tr. 22.   In addition, Lacy's testimony indicated that there had been no parked vehicles, surface hazards, and no foreign, fixed, or moving objects on the roadway that made it impractical for Elton to travel on the right edge of the roadway.   Tr. 27.   Lacy specifically testified that there was enough room on the roadway and that it would have been practical for Elton to move his velomobile all the way to the right side of the roadway

so as to allow vehicles to safely pass him.   Tr. 28-29.   In addition, Lacy testified that if Elton had been riding on "the most right side of the roadway," there would have been no need for passing vehicles to cross over the double yellow line.   Tr. 23.

{¶ 10} Following Ofc. Lacy's testimony, Elton made a Crim.R. 29 motion for acquittal of the charge of violating R.C. 4511.55(A).   In support of his motion, Elton argued that Lacy's testimony had established that the exception under R.C. 4511.55(C) applied to him and relieved him of the obligation to operate his velomobile as near to the right side of the roadway as practicable.   In so arguing, Elton relied on a portion of Lacy's testimony on cross-examination in which Lacy had agreed that, if there were a rule requiring Elton to operate his velomobile within three feet of the fog line, the lane of travel would be too narrow for any vehicle to stay within the lane of travel and safely pass his velomobile.   The trial court disagreed with Elton's argument and overruled his Crim.R. 29 motion.

{¶ 11} Elton then testified in his defense.   During his testimony, Elton generally claimed that riding his velomobile toward the right edge of roadways creates an unsafe scenario for him because roadways tend to be graded and lower at the edges, which makes his three-wheeled velomobile ride at an angle.   Tr. 36.   Elton also claimed that riding toward the right edge of the roadway in question had been dangerous because wind shear from passing vehicles caused a pressure drop that pulled him toward the vehicles.   Tr. 35.   To avoid that problem, Elton testified that he "straddled a hump in the middle of the road."   Tr. 36.   Elton also admitted that he tends to ride "more towards the left[.]"   Tr. 36.   In addition, Elton testified that there had been rocks akin to gravel on the

side of the roadway that made it unsafe for him to travel at its edge. Tr. 39. Elton also claimed that there had been defects on the roadway, such as cracks and tar, that prevented him from riding on the far-right side. Tr. 40-41.

{¶ 12} In addition to Elton's and Ofc. Lacy's trial testimony, the parties submitted, as a joint exhibit, a photograph depicting Elton's velomobile and the roadway where Lacy had stopped Elton. *See* Joint Exhibit I. The parties also submitted post-trial briefs for the trial court's consideration. In his post-trial brief, Elton argued that R.C. 4511.55(A) is unconstitutionally vague because its mandate to ride a bicycle "as near to the right side of the roadway as practicable" is ambiguous in that it does not clearly specify what lane position is illegal and allows for arbitrary enforcement of the statute. Elton also once again argued that Lacy's testimony established that the exception in R.C. 4511.55(C) applied to him.

{¶ 13} After considering all the evidence and the parties' post-trial briefs, on October 10, 2023, the trial court found Elton guilty of violating R.C. 4511.55(A) and sentenced him to pay a $100 fine and court costs. Elton now appeals from his conviction, raising three assignments of error for review.

## First Assignment of Error

{¶ 14} Under his first assignment of error, Elton contends that the trial court erred by failing to find that R.C. 4511.55(A) is unconstitutionally vague. According to Elton, the portion of R.C. 4511.55(A) requiring bicyclists to "ride as near to the right side of the roadway as practicable" does not provide a fair warning as to what lane position is illegal

and allows law enforcement officers to arbitrarily enforce the statute. Elton therefore claims that his conviction should be vacated on grounds that R.C. 4511.55(A) is void for vagueness.

{¶ 15} "The [void-for-vagueness] doctrine is based on the due process provision of the Fourteenth Amendment and bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " *In the Matter of: E.B.*, 2023-Ohio-2327, 220 N.E.3d 246, ¶ 13 (2d Dist.), quoting *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). (Other citation omitted.)

{¶ 16} " 'To establish that a statute is unconstitutionally vague, the challenging party must show that it is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *State v. Hammock*, 2d Dist. Montgomery No. 24664, 2012-Ohio-419, ¶ 6, quoting *Cane Task Force v. Nahum*, 159 Ohio App.3d 579, 2005-Ohio-300, ¶ 14 (2d Dist.), citing *State v. Anderson*, 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991). " 'In other words, the challenger must show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law.' " *Id.*, quoting *Anderson* at 171. Therefore, "[a] statute is not unconstitutionally vague if it '(1) provides sufficient notice of its proscriptions, and (2) contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement.' " *Dayton Tavern, Inc. v. Liquor Control Comm.*, 2d Dist. Montgomery No. 17651, 1999 WL 941826, *4 (Aug. 27, 1999), quoting *Perez v.*

*Cleveland*, 78 Ohio St.3d 376, 378, 678 N.E.2d 537 (1997).

{¶ 17} We stress that "[a] statute will not be declared void * * * merely because it could have been worded more precisely." *State v. Williams*, 88 Ohio St.3d 513, 532, 728 N.E.2d 342 (2000); *State v. Dorso*, 4 Ohio St.3d 60, 61, 446 N.E.2d 449 (1983). "The void-for-vagueness doctrine does not require that a statute be drafted with scientific precision, or that every detail regarding its procedural enforcement be contained therein." *Dayton Tavern* at *4. "Instead, the doctrine 'permits a statute's certainty to be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional.' " *Id.*, quoting *Perez* at 378-379. Indeed, "all legislative enactments enjoy a presumption of constitutionality," and "the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional." (Citations omitted.) *Dorso* at 61; *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). "The constitutionality of a statute is a question of law that we consider de novo." *State v. Weber*, 163 Ohio St.3d 125, 2020-Ohio-6832, 168 N.E.3d 468, ¶ 7, citing *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15.

{¶ 18} As previously discussed, Elton was charged with violating R.C. 4511.55(A), which states, in relevant part, that: "Every person operating a bicycle or electric bicycle upon a roadway shall ride as near to the right side of the roadway as practicable[.]" According to Elton, the requirement that bicyclists ride as near to the right side of the roadway as practicable is too vague and ambiguous to be enforced because it does not

clearly define where a bicycle must be operated in order to comply with the statute. Elton also argues that this allegedly vague requirement allows law enforcement officers to set their own arbitrary standards for determining what is "practicable"—a term that is not defined by the statute.

{¶ 19} In *Columbus v. Truax*, 7 Ohio App.3d 49, 454 N.E.2d 184 (10th Dist.1983), the Tenth District Court of Appeals addressed a similar vagueness challenge regarding former section 2171.04(a) of the Columbus City Code. At the time, that provision required pedestrians to "move, whenever practicable, upon the right half of crosswalks." *Id.* at 49. Similar to Elton, the appellant in *Truax* argued that C.C. 2171.04(a) was unconstitutionally vague because ordinary persons were forced to guess at when it was "practicable" to walk in the right half of a crosswalk. *Id.* at 49-50.

{¶ 20} In addressing the appellant's argument, the appellate court in *Truax* considered the Supreme Court of Ohio's decision in *Dorso*, 4 Ohio St.3d 60, 446 N.E.2d 449, which explained that "[a] legislative body need not define every word it uses in an enactment," and that "any term left undefined by statute is to be accorded its common, everyday meaning." *Id.* at 62. Following *Dorso*, the court in *Truax* looked to the definition of "practicable" found in Black's Law Dictionary and in case law from other jurisdictions. *Truax* at 50. In doing so, the court found that "Black's Law Dictionary (5 Ed.1979) defined 'practicable' as: '* * * that which may be done, practiced, or accomplished; that which is performable, feasible, possible * * *.' " *Id.* The court also found that other jurisdictions generally agreed with the definition in Black's Law Dictionary. *Id.* at 50-51. The court further noted that the Supreme Court of Ohio had

"defined 'practicable' as 'capable of being put into practice or accomplished,' or something that is 'reasonably possible.' " *Id*. at 51, quoting *State ex rel. Fast & Co. v. Industrial Comm.*, 176 Ohio St. 199, 201, 198 N.E.2d 666 (1964).

**{¶ 21}** Based on the aforementioned definition of "practicable" and the presumption of constitutionality that applies to legislative enactments, the appellate court in *Truax* held that "the use of the word 'practicable' in C.C. 2171.04(a), did not render the section unconstitutional or void for vagueness." *Id*. Specifically, the court found that C.C. 2171.04(a) "puts ordinary persons on notice that, if they walk in the left half of the crosswalk, they are violating the code section, unless, for some reason, such as crowds of pedestrians, a parked vehicle or a hole in the pavement, it is not feasible or practicable to walk in the right half of the crosswalk." *Id*.

**{¶ 22}** Upon review, we find that the definition of "practicable" in the current version of Black's Law Dictionary mirrors the definition that has been given by Supreme Court of Ohio. *See* Black's Law Dictionary (11th ed. 2019) (defining "practicable" as "reasonably capable of being accomplished; feasible in a particular situation"). When reviewing R.C. 4511.55(A) with that definition in mind, and when taking into consideration the presumption of constitutionality that applies to the statute, we find that a bicyclist of ordinary intelligence would be able understand what he or she is required to do under the law, i.e., not ride his or her bicycle in the middle of or in the left half of the roadway, but rather stay as far right on the roadway as possible. Accordingly, we find that the statute provides sufficient notice of its proscriptions and contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement. Contrary to Elton's

claim, the fact that the statute does not provide a precise distance from which to ride the bicycle from the edge of the roadway does not render it unconstitutionally vague.

{¶ 23} Elton's first assignment of error is overruled.

**Second and Third Assignments of Error**

{¶ 24} Under his second and third assignments of error, Elton challenges his conviction for violating R.C. 4511.55(A) on grounds that the trial court erred as a matter of law and ruled against the manifest weight of the evidence by failing to find that the exception in R.C. 4511.55(C) relieved him of the obligation to ride as near to the right side of the roadway as practicable.

{¶ 25} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When presented with a challenge to the manifest weight of the evidence, an appellate court may not substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d

172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 26} Because the trier of fact sees and hears the witnesses at trial, we must defer to the fact finder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). An appellate court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is "patently apparent that the factfinder lost its way." *State v. Bradley*, 2d Dist. Champaign No. 1997-CA-3, 1997 WL 691510, *4 (Oct. 24, 1997). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61 and 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 27} As previously discussed, Elton was convicted for violating R.C. 4511.55(A), which provides, in relevant part, that: "Every person operating a bicycle or electric bicycle upon a roadway shall ride as near to the right side of the roadway as practicable[.]" The testimony of both Ofc. Lacy and Elton established that, at the time in question, Elton was operating his velomobile in the middle of the roadway. Specifically, Elton testified that he had "straddled a hump in the middle of the road." Tr. 36. Ofc. Lacy also consistently described Elton's velomobile as being located in the middle of the roadway closer to the double-yellow centerline. Tr. 6, 12, 28. Despite this, Elton argues that his conviction for violating R.C. 4511.55(A)'s requirement to ride as near to the right side of the roadway as practicable was erroneous as a matter of law and was against the manifest weight of the evidence, because Lacy's trial testimony established that the exception in R.C.

4511.55(C) applied to him. Again, that exception states:

> [R.C. 4511.55] does not require a person operating a bicycle or electric bicycle to ride at the edge of the roadway when it is unreasonable or unsafe to do so. Conditions that may require riding away from the edge of the roadway include when necessary to avoid fixed or moving objects, parked or moving vehicles, surface hazards, or if it otherwise is unsafe or impracticable to do so, including if the lane is too narrow for the bicycle or electric bicycle and an overtaking vehicle to travel safely side by side within the lane.

R.C. 4511.55(C).

{¶ 28} In support of applying R.C. 4511.55(C), Elton relies on a portion of Ofc. Lacy's testimony in which Lacy agreed that, *if there were a rule requiring Elton to operate his velomobile within three feet of the fog line*, the lane of travel would be too narrow for any vehicle to stay within the lane of travel and safely pass his velomobile. Tr. 18, 21-22. There is, however, no rule requiring Elton to operate his velomobile within three feet of the fog line, and Lacy never testified that the lane of travel was otherwise too narrow for vehicles to stay within the lane of travel and safely pass Elton. On the contrary, Lacy testified that if Elton had been traveling on the far right side of the roadway as required by R.C. 4511.55(A), vehicles could have safely passed him without crossing over the double-yellow centerline. Tr. 23, 28-29. Lacy's testimony also indicated that there were no parked cars, surface hazards, or foreign, fixed, or moving objects on the roadway that made it impractical to ride on the right edge of the roadway. *Id.* at 27. Therefore,

contrary to Elton's claim otherwise, Lacy's testimony did not establish that R.C. 4511.55(C) applied to Elton.

{¶ 29} Elton also argues that, based on the width of the roadway in question, the width of his velomobile, and the requirement in R.C. 4511.27(A)(1) for vehicles to have a minimum clearance of three feet when passing bicycles,[1] it would be impossible for any vehicle to safely pass his velomobile within the lane of travel even if he had been operating it on the far-right side of the roadway.   In support of this argument, Elton claims that it was undisputed that his velomobile was three feet wide and that the roadway in question was ten feet wide.   While Ofc. Lacy did testify that the velomobile was "roughly" three feet wide, the record establishes that the officer was not certain about the width of the roadway and simply agreed that ten to eleven feet wide "sounded reasonable."   Tr. 16.   Elton, on the other hand, testified that the roadway was ten feet wide "plus or minus maybe a half a foot to a foot or so."   Tr. 35.   The trial court indicated that it would give Elton's testimony on that matter "the weight it's worth."   Tr. 35.   Indeed, "the trier of fact may credit some, part, or none of the testimony of a witness."   *State v. Pheanis*, 2d Dist. Montgomery No. 26560, 2015-Ohio-5015, ¶ 29, citing *State v. Butt*, 2d Dist. Montgomery No. 22774, 2009-Ohio-6814, ¶ 19, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶ 30} Because the trial court did not apply the exception in R.C. 4511.55(C) and instead found Elton guilty of violating R.C. 4511.55(A), we presume the trial court found

---

[1] R.C. 4511.27(A)(1) provides, in relevant part, that: "The operator of a vehicle * * * overtaking another vehicle * * * proceeding in the same direction shall * * * pass to the left thereof at a safe distance * * *.  When a motor vehicle * * * overtakes and passes a bicycle or electric bicycle, three feet or greater is considered a safe passing distance."

that the roadway in question was a sufficient width for vehicles to have safely passed Elton's velomobile if the velomobile were traveling on the far-right side of the roadway. Because it is somewhat difficult to make that determination from Joint Exhibit I, i.e., the photograph showing the roadway and the velomobile, we presume the trial court primarily relied on Ofc. Lacy's testimony in that regard. We can also presume from the guilty verdict that the trial court relied on Lacy's testimony indicating that there were no surface hazards on the roadway that made it impractical to ride on the right edge of the roadway. Simply because the trial court chose to believe Lacy's testimony over Elton's on those matters does not mean that the trial court's verdict was against the manifest weight of the evidence. *See State v. McCary*, 2d Dist. Montgomery No. 28250, 2019-Ohio-4596, ¶ 33 (" '[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events"), quoting *State v. Oswald*, 9th Dist. Summit No. 28633, 2018-Ohio-245, ¶ 25.

**{¶ 31}** After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering witnesses credibility, we do not find that the trial court lost its way and created a manifest miscarriage of justice by finding that the exception in R.C. 4511.55(C) did not apply to Elton and that Elton was guilty of violating R.C. 4511.55(A). Again, Ofc. Lacy's testimony indicated that there was enough space for Elton to move over to the far-right side of the roadway so that vehicles could safely pass him and that there were no parked cars, surface hazards, or foreign, fixed, or moving objects on the roadway that made it impractical for Elton to travel on the right edge. The decision to credit Lacy's testimony in that regard was within the province of the trial court, and we do

not find that the trial court lost its way and created a manifest miscarriage of justice by doing so. Based on Lacy's testimony, we also do not find that the trial court's failure to apply the exception in R.C. 4511.55(C) was an error of law. Therefore, Elton's claim that the trial court erred as a matter of law and ruled against the manifest weight of the evidence by failing to find that the exception in R.C. 4511.55(C) relieved him of the obligation to ride as near to the right side of the roadway as practicable lacks merit.

{¶ 32} Elton's second and third assignments of error are overruled.

## Conclusion

{¶ 33} Having overruled all of Elton's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.