[Cite as *State v. Hake*, 2026-Ohio-1393.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30643 |
| Appellant | : | |
| | : | Trial Court Case No. 2024 CR 02724 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| NATHAN HAKE | : | Court) |
| | : | |
| Appellee | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on April 17, 2026, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

MICHAEL L. TUCKER, JUDGE

LEWIS, P.J., and HANSEMAN, J., concur.

ANTHONY COOPER and KENNETH EGBERT, JR., Attorneys for Appellant
JACOB S. SEIDL, Attorney for Appellee

TUCKER, J.

{¶ 1} The State of Ohio appeals from the judgment entry of the Montgomery County Common Pleas Court dismissing a misdemeanor charge against appellee Nathan Hake for illegal disposal of construction and demolition debris.

{¶ 2} The trial court found the charge void for vagueness because key terms were subjective in nature, resulting in potentially arbitrary, capricious, and discriminatory enforcement. The State argues that the trial court erred in finding the charge unconstitutionally vague.

{¶ 3} We agree that the charge is not void for vagueness as applied to Hake. Accordingly, the trial court's judgment is reversed, and the case is remanded for further proceedings.

## I. Background

{¶ 4} A grand jury indicted Hake on charges of unlawfully disposing of solid waste by open burning or open dumping, operating a solid waste facility without a license, and violating an environmental rule by illegally disposing of construction and demolition debris. The first two charges were unclassified felonies, and the third charge was a second-degree misdemeanor.

{¶ 5} The three charges stemmed from Hake allegedly using an excavator to dig a large pit and then filling the pit with solid waste as well as construction and demolition debris. The State's May 28, 2025 amended bill of particulars provided these details:

The specific conduct of the Defendant which is alleged to constitute the offenses charged in **Count 1, Count 2, and Count 3** of the indictment is as follows: in February 2023 Nathan Hake, through his house-flipping commercial business Prodigy Tools, Inc, purchased a property located at 15019 Dayton-Eaton Pike in Perry Township, Montgomery County, Ohio. The 2 plus acre tract of land consisted of a house, a detached garage, and an old shed. As part of his commercial house-flipping operations, the Defendant completely gutted the abandoned house and placed solid waste materials, along with construction & demolition debris, on the ground at the property. The solid waste placed on the ground at the property included appliances, plastics, PVC piping, oil jugs, a few scrap tires, and household garbage. The construction & demolition debris the Defendant placed on the ground at the property included drywall, wood boards, and the old woodshed.

During the week of August 14, 2023, through August 21, 2023, the Defendant rented a John Deere "225" excavator. The Defendant used the excavator and other heavy equipment to dig a large hole at the property and illegally dispose of the solid waste, along with the construction & demolition debris that was on the ground at the property, by burying these materials in the large hole. During this time, the gutted house was boarded up and no longer was a residence. The Defendant was aware that no people resided within the gutted house, so there was not solid waste being generated within the house to exempt the illegal disposal activity under R.C. 3734.02(D) and Ohio Administrative Code Rule 3745-27-03. The Defendant lived at his own residence [in] . . . Eaton, Ohio.

3

Instead of using dumpsters, roll-off containers, or dump trailers as part of his commercial house-flipping operation to collect the waste and debris on the ground at 15019 Dayton-Eaton Pike and paying disposal fees to legally dispose of the solid waste and demolition debris at a licensed disposal facility, the Defendant blatantly disregarded Ohio's solid waste laws and buried the solid waste that had been on the ground at 15019 Dayton-Eaton Pike in the huge hole the Defendant had dug on the property, which was maintained as an unlicensed solid waste facility. The Defendant continued to maintain the unlicensed facility, which was not on the approved list of licensed solid waste facilities at Montgomery County Public Health, for 10 continuous months until June 12, 2024, when Ohio EPA uncovered the buried solid waste, along with the construction & demolition debris, and legally disposed of the waste and debris at a licensed facility.

Moreover, the Defendant was aware he had illegally disposed of construction & demolition debris that had been on the ground at 15019 Dayton-Eaton Pike by burying the old shed and other construction & demolition debris at an unlicensed site, a prohibited method of disposal which violated Rule 3745-400-04 of the Ohio Administrative Code, a rule authorized by R.C. 3714.02 of Chapter 3714 of the Revised Code. The Defendant admitted to law enforcement on April 11, 2024, in an interview conducted outside his own residence in Eaton, Ohio, that he illegally disposed of demolition debris when he stated that he had pushed the old shed and a window that was part of the shed in the hole at the property located at 15019 Dayton-Eaton Pike.

4

{¶ 6} As part of its investigation, the Ohio Bureau of Criminal Investigation excavated part of the hole and allegedly found solid waste, including "plastic tarps, plastic kids' toys, plastic bottles, plastic cooler, plastic buckets, plastic sheeting, plastic totes, plastic 55-gal drum, black garbage bags containing household trash, unidentifiable plastic materials, automotive gas tank, furniture, appliance parts, rugs, insulation, exercise equipment, coated wiring, air tank, propane tank, Stryofoam, and scrap tires." The excavation also allegedly uncovered construction and demolition debris, including "shingles, concrete, metal gutters, and what appeared to be wooden building materials and 2x4s from the old shed or garage that was on the property."

{¶ 7} Hake moved to dismiss the three charges on the basis that they were void for vagueness. The trial court overruled Hake's motion as to the two felony counts charging unlawful disposal of solid waste by open burning or open dumping and operating a solid-waste facility without a license. The trial court sustained the motion, however, as to the misdemeanor charge of violating an environmental rule by illegally disposing of construction and demolition debris. After reviewing the charge, the trial court found the words "disposal," "facility," "temporary period," and "substantially unchanged" were ambiguous, subjective, and void for vagueness because they allowed arbitrary, capricious, and discriminatory enforcement. This appeal by the State followed.

## II. Analysis

{¶ 8} The State presents the following assignment of error:

The trial court erred as a matter of law in dismissing the charge because the statute governing the disposal of construction and demolition debris, R.C. 3714.13(B), is not unconstitutionally vague.

5

{¶ 9} Hake was charged with violating R.C. 3714.13(B), which provides that "[n]o person shall violate a rule adopted under this chapter." The rule Hake allegedly violated was part of the Ohio Administrative Code, former Adm.Code 3745-400-04(B). At the time of his actions, it provided: "No person shall conduct or allow illegal disposal of construction and demolition debris."

{¶ 10} The key words in the rule are "illegal disposal" and "construction and demolition debris." Both phrases are defined by rule and statute. The trial court found no ambiguity in the phrase "construction and demolition debris," which R.C. 3714.01 defines as "those materials resulting from the alteration, construction, destruction, rehabilitation, or repair of any physical structure that is built by humans, including, without limitation, houses, buildings, industrial or commercial facilities, or roadways." Under Adm.Code 3745-400-01, "construction and demolition debris" includes "those structural and functional materials comprising the structure and surrounding site improvements, such as brick, concrete and other masonry materials, stone, glass, wall coverings, plaster, drywall, framing and finishing lumber, roofing materials, plumbing fixtures, heating equipment, electrical wiring and components containing no hazardous fluids or refrigerants, insulation, wall-to-wall carpeting, asphaltic substances, metals incidental to any of the above, and weathered railroad ties and utility poles."

{¶ 11} The other key words, "illegal disposal," are defined under Adm.Code 3745-400-01 to include "the disposal of construction and demolition debris at any place other than a construction and demolition debris facility operated in accordance with Chapter 3714. of the Revised Code, this chapter, and Chapter 3745-501 of the Administrative Code; a solid waste disposal facility operated in accordance with Chapter 3745-27 of the Administrative Code and licensed in accordance with Chapter 3745-501 of the Administrative Code; or as

6

otherwise authorized by this chapter." In essence, "'[i]llegal disposal' occurs when construction and demolition debris is placed anywhere other than a licensed landfill." *State ex rel. DeWine v. ARCO Recycling, Inc.*, 2022-Ohio-1758, ¶ 66 (8th Dist.).

{¶ 12} Although the foregoing definitions seem straightforward, the trial court observed that R.C. 3714.01 defines the term "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, emitting, or placing of any construction and demolition debris into or on any land or ground or surface water or into the air, *except if the disposition or placement constitutes storage*." (Emphasis added.) In contrast to "disposal," the trial court noted that R.C. 3714.01 defines "storage" as "the holding of construction and demolition debris for a *temporary period* in such a manner that it remains retrievable and *substantially unchanged* and, at the end of the period, is disposed of or reused or recycled in a beneficial manner." (Emphasis added.)

{¶ 13} The trial court reasoned that the words "temporary period" and "substantially unchanged" in the definition of "storage" are vague and "subjective values which may vary from ordinary person to ordinary person." Therefore, it found the word "disposal" in the charge against Hake void for vagueness because "disposal" explicitly excludes "storage," which in turn uses the undefined words "temporary period" and "substantially unchanged."

{¶ 14} Finally, the trial court found the word "facility" impermissibly vague as to the misdemeanor charge against Hake. It noted that R.C. 3714.01 defines "facility" as "any site, location, tract of land, installation, or building used for the disposal of construction and demolition debris." Because this definition contains the word "disposal," and the definition of "disposal" excludes "storage," which is defined using the words "temporary period" and "substantially unchanged," the trial court deemed the word "facility" void for vagueness as well.

7

**{¶ 15}** The trial court held that the misdemeanor charge against Hake was impermissibly vague because it contained subjective terms capable of being applied arbitrarily and capriciously. It cited *Tipp City v. Peachey*, 2000 WL 966398, *3 (2d Dist. July 14, 2000), for the proposition that an ordinance cannot "delegate basic policy matters to enforcement officials for resolution on a subjective basis." Based on its analysis, the trial court dismissed the misdemeanor charge against Hake for violating R.C. 3714.13(B) by violating Adm.Code 3745-400-04(B).

**{¶ 16}** "The void-for-vagueness doctrine is a component of the right to due process and is rooted in concerns that laws provide fair notice and prevent arbitrary enforcement." *In re Columbus S. Power Co.*, 2012-Ohio-5690, ¶ 20, citing *Skilling v. United States*, 561 U.S. 358, 412 (2010). To establish impermissible vagueness, a challenger must prove beyond a reasonable doubt that a statute is vague "'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *State v. Anderson*, 57 Ohio St.3d 168, 171 (1991), quoting *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). "In other words, the challenger must show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law." *Id*. "[T]o pass constitutional muster, the challenged statute or ordinance must: (1) provide fair warning about what conduct is proscribed, (2) preclude arbitrary, capricious, and discriminatory enforcement, and (3) not unreasonably impinge on constitutionally protected rights." *Huron v. Kisil*, 2025-Ohio-2921, ¶ 11, citing *State v. Collier*, 62 Ohio St.3d 267, 269-270 (1991), citing *State v. Tanner*, 15 Ohio St.3d 1, 3 (1984).

**{¶ 17}** "[S]tatutes or ordinances imposing criminal sanctions require a more stringent review for vagueness than statutes or ordinances imposing civil penalties because 'the

8

consequences of imprecision are qualitatively' more severe for statutes or ordinances imposing criminal liability." *Kisil* at ¶ 11, quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-499 (1982). "Nevertheless, 'all statutes designed to promote the public health, safety, and welfare . . . enjoy a strong presumption of constitutionality.'" *Id.*, quoting *Anderson* at 171, citing *State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas*, 9 Ohio St.2d 159 (1967).

{¶ 18} To establish impermissible vagueness, a challenger must prove that a statute is "vague in its application to the party at issue in the case." *Kisil* at ¶ 13. "'A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.'" *Id.*, quoting *Hoffman Estates* at 495 (Footnote omitted.); *see also United States v. Powell*, 423 U.S. 87, 92 (1975) (recognizing that vagueness challenges not involving the First Amendment must be reviewed based on the facts of the case).

{¶ 19} Hake acknowledges on appeal that he is challenging R.C. 3714.13(B) and Adm.Code 3745-400-04(B) as applied to him. *See* Appellee's Brief, p. 3. Because the trial court resolved his motion before trial, he agrees that the proper approach is to accept the State's factual allegations as true for purposes of his motion and to resolve the void-for-vagueness issue based on those allegations. *Id*. at p. 15. We find this approach to be appropriate. We note that whether the misdemeanor charge at issue is impermissibly vague is a question of law subject to de novo review. *State v. Elton*, 2024-Ohio-1494, ¶ 17 (2d Dist.).

{¶ 20} With the foregoing standards in mind, we conclude that the administrative rule Hake allegedly violated, Adm.Code 3745-400-04(B), is not void for vagueness. The rule

9

prohibited him from conducting the illegal disposal of construction and demolition debris. Given the trial court's finding that "construction and demolition debris" is not ambiguous, the only real question is whether the word "disposal" is impermissibly vague. If the word "disposal" is understandable to a person of ordinary intelligence, it follows that the words "illegal disposal" and "facility" are not ambiguous. Once again, under Adm.Code 3745-400-01, "illegal disposal" simply means the disposal of construction and demolition debris anywhere other than a licensed facility. Under R.C. 3714.01, a "facility" is "any site, location, tract of land, installation, or building used for the disposal of construction and demolition debris."

{¶ 21} We believe a person of ordinary intelligence could distinguish between "disposal" and "storage" of construction and demolition debris as those words are used here. R.C. 3714.01 defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, emitting, or placing of any construction and demolition debris into or on any land or ground or surface water or into the air, except if the disposition or placement constitutes storage." Setting aside the "storage" exception for a moment, we see nothing ambiguous about this definition, which plainly would prohibit abandoning or discarding construction and demolition debris by burying it in the ground.

{¶ 22} The "storage" exception in R.C. 3714.01 also is not impermissibly vague. The statute defines "storage" as "the holding of construction and demolition debris for a temporary period in such a manner that it remains retrievable and substantially unchanged and, at the end of the period, is disposed of or reused or recycled in a beneficial manner." Although "temporary period" is undefined, the word "temporary" is commonly understood as not permanent or for a limited time. As for "substantially unchanged," the term "substantially" is a word "that permeates the law." *United States v. Collins*, 603 F. Supp. 301, 305 (S.D.Fla.

10

1985). "Courts must make determinations based on a substantiality standard on a daily basis." *Id*. Indeed, we note with perhaps some irony that one test for determining whether certain statutes are void for vagueness is whether they are "substantially incomprehensible." *Columbia Gas Transm. Corp. v. Levin*, 2008-Ohio-511, ¶ 46 (applying this standard to a civil statute). In common usage, the word "substantially" is understood to mean considerably, largely, or to a great degree. Although the terms "temporary period" and "substantially unchanged" are not precisely defined in R.C. 3714.01, they also are not impermissibly vague when used in context to distinguish "storage" from "disposal." "A statute will not be declared void . . . merely because it could have been worded more precisely." *State v. Rober*, 2015-Ohio-5501, ¶ 19 (6th Dist.).

{¶ 23} In our view, R.C. 3714.01 plainly prohibits permanently discarding construction and demolition debris by burying it somewhere other than a licensed facility. This prohibition does not apply if debris is being held temporarily in a largely unchanged condition so that it can be retrieved for later recycling or other beneficial use. In the present case, it is unnecessary to explore the outer limits of what qualifies as "temporary" or to identify precisely how "unchanged" construction and demolition debris must be to qualify for storage. The State alleges that Hake excavated a large pit, dumped an assortment of construction and demolition debris into the hole, and abandoned the debris by covering it with dirt. A person of ordinary intelligence would understand that this conduct is prohibited by Adm.Code 3745-400-04(B) unless Hake only temporarily buried the construction and demolition debris in a largely unchanged condition so that it could be retrieved for later recycling or other beneficial use.

{¶ 24} Having found no impermissible ambiguity or vagueness, we see no basis for concluding that R.C. 3714.01 enables arbitrary, capricious, or discriminatory enforcement of

11

Adm.Code 3745-400-04(B). In reaching this conclusion, we note that the Eighth District Court of Appeals rejected Hake's argument in *ARCO Recycling*, 2022-Ohio-1758 (8th Dist.). Although that case was a civil enforcement action rather than a criminal prosecution, the Eighth District determined that R.C. 3714.01 adequately defined "storage." Consistent with our analysis here, the Eighth District reasoned:

Riley contends that the Ohio EPA's definition of "storage" does not further define "temporary," "retrievable," and "substantially unchanged" and, therefore, subjected him to arbitrary enforcement. The Ohio EPA's rules mirror the Ohio Revised Code. R.C. 3714.01 defines "storage" as "the holding of construction and demolition debris for a temporary period in such a manner that it remains retrievable and substantially unchanged and, at the end of the period, is disposed of or reused or recycled in a beneficial manner." The plain language of the rules put Riley on notice of what constituted storage. *See State ex rel. Pennington v. Gundler*, 75 Ohio St.3d 171, 173, 661 N.E.2d 1049 (1996) (words used in a statute are to be given their usual, normal, and customary meaning.).

*Id*. at ¶ 71.

{¶ 25} We also find our decision in *Peachey*, 2000 WL 966398, to be distinguishable. The trial court relied on *Peachey* for the proposition that "[a] vague ordinance impermissibly delegates basic policy matters to enforcement officials for resolution on a subjective basis." *Id*. at *3. *Peachey* involved a zoning regulation prohibiting any exterior "alteration" to property without a certificate of appropriateness. An "alteration" was defined as a "material change" to an external architectural feature. The phrase "material change" was undefined. The zoning regulation in *Peachey* directed a board to adopt guidelines establishing standards for

12

the review of proposed exterior changes. Despite this directive, the board never adopted any guidelines. Upon review, we noted evidence of board members' inconsistency in defining and applying the "material change" standard. We found the zoning regulation void for vagueness, reasoning:

Because the Restoration Board failed to adopt guidelines, the ordinance does not set forth explicit standards for those board members who apply it. Consequently, each board member is left to call upon his own idea of what "material change" means, as is shown by Dando's testimony. We do not believe that allowing board members to use their own subjective definitions of "material change" will prevent arbitrary enforcement of the ordinance.

More importantly, Dando stated that the board members considered "material change" to mean a "change of materials." Clearly, it would seem to us that a "*material* change" would not encompass just *any* change of materials at all. The ordinance explicitly defines "alternation" as any *material* change in the external architectural features of the property, not as *any change at all* in such features.

As we stated, *supra*, we can never expect exact certainty from the language in an ordinance. The language must, however, be clear enough to provide explicit standards for those who apply the ordinance to prevent arbitrary and discriminatory enforcement. In this case, the Restoration Board has failed to adopt guidelines, as required by the ordinance, and thus there are no explicit standards that the board members can follow. Thus, we conclude that Section 154.052, as applied, is unconstitutional because it is void for vagueness.

13

(Emphasis in original.) *Id*. at *4-5.

**{¶ 26}** Unlike *Peachey*, the record before us reveals no history of inconsistent or impermissibly subjective decision-making regarding what constitutes "disposal" or "storage." As explained above, we see no reasonable basis for confusion about the meaning of those terms and no real danger of arbitrary, capricious, or discriminatory enforcement of Adm.Code 3745-400-04(B). Unlike *Peachey*, Hake's case also does not involve the absence of mandated guidelines providing explicit standards governing the application of Adm.Code 3745-400-04(B). In short, the specific concerns underlying *Peachey* are absent here.

**{¶ 27}** Finally, having found that the misdemeanor charge against Hake is not void for vagueness, we need not address the State's alternative arguments (1) that he cannot simultaneously assert an affirmative defense and rely on the void-for-vagueness doctrine, (2) that the misdemeanor charge cannot be unconstitutionally vague because enforcement officials told Hake his actions were prohibited, or (3) that the trial court improperly developed a vagueness argument for him. These issues have been rendered moot by our finding that the misdemeanor charge is not void for vagueness.

### III. Conclusion

**{¶ 28}** The State's assignment of error is sustained. The trial court's judgment is reversed, and the case is remanded for further proceedings.

. . . . . . . . . . . . .

LEWIS, P.J., and HANSEMAN, J., concur.

14